MARY PIKE, *in equity, versus* ABNER COLLINS, PELATIAH MOORE AND JOHN PIKE.

A bond given to husband and wife for their maintenance during each of their lives, belongs to the wife, if she survive the husband, unless reduced to possession by him.

To reduce it to possession, the husband must do some act, indicating an appropriation of it to himself or disaffirming her right.

The recovery of a judgment by him in the name of both, upon such a bond, without taking out execution, shows a disposition not to appropriate it to himself.

In a mortgage made to the husband alone to secure such a bond, the wife has a sustainable interest.

After the death of the husband and a foreclosure of the mortgage by his administrator, the administrator and those holding by purchase under him, will hold the land, charged with the maintenance of the widow, in proportion to the value of their respective parts. The liability of such holders commences from the time of their respective purchases.

A tenant of one who holds land subject to such a charge, is properly made a party to a bill brought by the widow to enforce her claim, for the decree may be such as to terminate his tenancy.

In equity, the husband may be trustee of the wife, and the trust in his hands may be enforced, as if he were a stranger, and his representatives are subject to the same liability.

Where a registered mortgage deed of land mentions the bond, (which it was intended to secure,) although without specifying its contents, subsequent purchasers are chargeable with notice of its provisions.

THE material facts, upon which the plaintiff's claim rests, are in substance as follows : —

James Pike, owning a farm, in 1831 conveyed it to his son, Dominicus Pike, and, in part consideration therefor, received from Dominicus a bond to *himself and his wife*, this plaintiff, in the penal sum of $1000, conditioned to maintain them and each of them during their lives ; also a mortgage of the land to *himself*, conditioned that the mortgager should pay to said James $1000, or otherwise fulfil and keep the covenants in said bond. This mortgage was recorded March 8, 1847. Before it was recorded, two small parts of the farm were set off on executions against Dominicus ; one of five acres to said Moore, and the other of six and a half acres to one Warren, said creditors then having no knowledge of the mortgage.

In February, 1838, James and his wife recovered judgment against Dominicus upon the bond, for $100 damages with costs. James died in December, 1838, and Daniel Smith administered upon his estate. Dominicus assigned to William Pike his right of redeeming the farm, excepting the two pieces which had been set off on execution.

In an action upon the mortgage, brought by James' administrator, against William, a conditional judgment was recovered by assent of this plaintiff, for $66,67, due to James' estate, and $83,33, due to this plaintiff. Upon that judgment the mortgage was foreclosed in 1844.

The administrator, by leave of Probate Court, in February, 1847, conveyed the right of his intestate, in the residue of the farm, to James Pike, a son of the intestate, for $43 in cash, and a promissory note of $107, signed by the purchaser and one John Merrill. Said James, jr., then, without consideration, conveyed his right to Merrill, who, at the request of said James, jr., mortgaged the same to said administrator, to secure payment of the $107 note, and then quitclaimed his remaining right to Eunice, the wife of said James, jr., who paid nothing therefor. Merrill and James, jr. and Eunice, all had knowledge of the mortgage. James, jr. and Eunice went into occupation of a large part of the farm, and in 1849 paid the mortgage and caused it to be discharged.

John Pike, one of the defendants, in Sept. 1849, well knowing of the first mentioned mortgage, took a conveyance, without any consideration, from James, jr. and Eunice of two small parcels of the farm, comprising about eight acres ; and afterwards conveyed the same to Royal B. Hanson. He bought them by request of this plaintiff, and has paid her for the same.

Afterwards in the same Sept. (1849,) Collins, one of the defendants, through the agency of Moore, the other defendant, (both of them having knowledge of the first named mortgage,) procured from James, jr. and Eunice a conveyance of her rights. Moore occupies as tenant to Collins.

The foregoing are to be considered as the material facts.

The bill, however, alleges many other things, and imputes the usual quantum of fraudulent intentions.

It prays that Collins and Moore be decreed to convey to the plaintiff whatever rights they acquired by the conveyance from James Pike, jr. and Eunice Pike ; and to surrender to her the residue of the farm, and to pay reasonable rents and costs, or that the farm be decreed chargeable with all the sums due to the plaintiff and for her future support, and for further relief.

*Emery,* for the plaintiff.

*Bourne* and *Chisholm,* for the defendants.

I. The plaintiff's rights, if she have any, are attainable at law.

Of this suit at equity, the Court has therefore no jurisdiction.

1st. Assumpsit lies to enforce a trust, chargeable on land, and running with it. *Swazey* v. *Little,* 7 Pick. 297 ; *Ewer* v. *Jones,* 2 L'd Raym. 937 ; *Felch* v. *Taylor,* 13 Pick. 133 ; *Hinkly* v. *Fowler,* 15 Maine, 289.

2d. She charges an ejectment. If Collins had no title, trespass for invading her possession would lie.

3d. Writ of entry lies against a fraudulent purchaser, by one seized under an equitable title.

If the plaintiff may not sue upon her own possession, the law provides for an action by the administrator. *Holmes* v. *Fisher,* 13 N. H. 9 ; *Sanders* v. *Filley,* 554 ; *Dewey* v. *Van Deusen,* 4 Pick. 19 ; *Luques* v. *Thompson,* 26 Maine, 514.

It is, in such case, of no importance whether the estate be interested or not. 18 Maine, 227.

II. But if the Court has jurisdiction, the suit must fail, —

1st. For want of a previous demand of the support required. 13 N. H. 9 ; 13 Pick. 299 ; 26 Maine, 514 ; Ann. Dig. 1848, 280, 288.

2d. The suit should have been by the administrator or jointly by him and the plaintiff. 13 N. H. 9 ; 16 Mass. 335 ; 15 Mass. 290.

Pike *v.* Collins.

3d. The condition of the mortgage was to pay James Pike $1000, or to support him and the plaintiff.

The $1000 were paid by the foreclosure, for the bill alleges the farm to have been worth more than that sum. By the foreclosure the land became the mortgagers, as if no conveyance had been made. The bond was merged in the judgment, and therefore has no longer any operative existence. *Bubier* v. *Bubier*, 24 Maine, 42.

The plaintiff assented to the judgment, and is estopped by it.

III. If plaintiff have any right, it must result from a wrongful disposition of the land, after the extinction of the mortgage.

But the mortgage was assets, in the administrator's hands, and he sold the rights under it, as he was bound to do, for the payment of debts.

IV. The plaintiff has no equities. She was not the meritorious cause. She furnished nothing, she relinquished nothing, not even her right of dower. *Chapman* v. *Emery*, Cowper, 280.

The law of dower is equity itself. To enlarge it would be inequity. She is now entitled to dower.

V. The bill alleges that the administrator agreed to hold the land for the plaintiff. If so, it was but his personal contract. To that she must resort. 7 Pick. 1 ; 2 Peere Williams, 148.

VI. The land was sold at auction under license, for payment of debts, without any alleged fraud or collusion. Such conveyances confer valid title. 1 Story on Eq. § 422 ; 2 Story on Eq. § 1016 ; 2 Peere Williams, 148 ; 5 Howard, 233.

VII. The claim is by mortgagee against mortgager. But no process in equity lies to *foreclose*. As applicable to this case, the equity power of the Court extends only to secure the right of *redeeming* by one in the relation of mortgager.

The case shows no *trust*. It is but the case of an ordinary mortgage. 23 Maine, 48 and 174 ; 25 Maine, 341 ; 2 Story on Eq. 279, in notes ; 4 Met. 586 ; 28 Maine, 363.

The mortgagee could have acquired an absolute title by foreclosure. How could there then have been a trust. The

rights were wholly at law.   If she ever had a right to redeem her husband's interest in the mortgage, her right was subsequent to his, and was lost by the foreclosure.

But if she now has such a right, she cannot maintain this bill, because no tender has been made, and the party standing in the relation of mortgager, has not refused to account.

The stipulations of the first mortgage were to the husband, and, so far as her maintenance was concerned, were for his benefit.

VIII. A specific performance or reconveyance cannot be decreed, when a part of the consideration has been paid. *Marston* v. *Humphrey*, 24 Maine, 513.   The bill alleges that the bond was but a part of the consideration for the first conveyance.   And even the bond itself was paid by the foreclosure. The payment also of the $150 to the administrator would forbid a decree of reconveyance.   The bill fails to disclose what constituted the balance of the consideration.   How can the Court adjust the terms of a decree ?

IX. The bill is defective for the want of proper parties. James Pike, jr. and Eunice, his wife, should be parties, for they have been receivers.   So also Daniel Smith, the administrator, should be joined.   He being dead, his administrator should be summoned in.   John Pike should be a party, that he may be decreed as to his proportion of the maintenance. Dominicus should be joined, for it does not appear that he has fully performed.

WELLS, J. — The plaintiff alleges in her bill, that in 1831, her husband, James Pike, conveyed his. farm to his son Dominicus, and in part consideration for the conveyance, took from Dominicus a bond to himself and the plaintiff for their support and maintenance, during their lives and the life of each of them, and also a mortgage to himself of the farm, to secure the performance of the conditions of the bond.   After the death of the husband, his administrator *de bonis non* recovered judgment against the grantee of Dominicus for the farm, the conditions of the mortgage not having been per-

formed. The mortgage appears to have been foreclosed by the administrator, who, by virtue of a license from the judge of probate, sold the same as the estate of the husband. These facts are established by the proof.

The condition of the mortgage is in substance, that Dominicus shall pay to James one thousand dollars, or " otherwise fulfil and keep the covenants in a certain bond given by the said Dominicus to the said James and his wife, then this deed and also a certain bond, bearing even date with these presents, given by the said Dominicus to the said James and his wife, to pay the same sum aforesaid, at the time aforesaid, shall both be void," &c.

One of the defendants claims title under the sale of the administrator.

The plaintiff contends that the title to the farm is held in trust for her support.

The bond to the husband and wife would belong to the survivor. *Draper* v. *Jackson*, 16 Mass. 480. And although it was given during coverture, it would survive unless reduced into possession by the husband. *Hayward* v. *Hayward*, 20 Pick. 517. To reduce it to possession, the husband must do some act indicating an appropriation of it to his own use, or disaffirming the right of his wife. *Stanwood* v. *Stanwood*, 17 Mass. 57; *Wedman* v. *Wedman*, 9 Ves. 174. A judgment in the name of both, without suing out execution, shows a disposition not to appropriate it to himself. 1 Roper's Husband and Wife, 204 and 208. The husband brought an action on the bond in the name of himself and wife, but it is not stated that an execution was taken out, and if it had been, it would only indicate his intention to take the damages, which had then accrued, and could not be construed as an expression of a purpose to divest her of the residue, which might subsequently arise upon future breaches. As the husband did not discharge the bond, as he might have done, nor reduce it into his possession in a legal sense, it must be considered as the property of the wife.

The mortgage was made to the husband alone, and the con-

dition could have been performed by the payment of a thousand dollars to him, or the performance of the condition of the bond by supporting them. Neither of the conditions was performed by the mortgager. And in the action upon the mortgage, the conditional judgment was rendered for the damages due for not rendering the support. Did the administrator hold the mortgage in equity for the plaintiff? He must be considered as holding it for the same purposes as the husband did, after the recovery of the judgment in his name. The penal sum of the bond is a thousand dollars, and the condition of the mortgage as to the payment of the same sum, appears to have been intended to leave it optional with the mortgager to pay the penalty of the bond, or to render the support. The husband then held the mortgage for the joint benefit of himself and wife, to secure the payment of the penalty to both or the support of both. If the mortgage had been made to the husband and wife, according to the case of *Draper* v. *Jackson,* upon the death of the husband, the wife would have taken it by survivorship. It was made to him, but with the evident purpose to be held for their joint benefit. The debt is the principal thing, and the mortgage is but incident to it, and in equity the mortgage belongs to the owner of the debt. *Johnson* v. *Candage,* 31 Maine, 28. Where a debt is due to two persons, and a mortgage is made to one of them to secure it, and the estate is foreclosed, it would not accord with equity, that he should hold the whole estate, and he would be considered as holding in trust the share of his co-creditor. In law the husband and wife are treated for most purposes as one person, but in equity the husband may be the trustee of the wife, and the trust be enforced in the same manner as if he were a mere stranger. Story's Eq. Juris. sect. 1367 and 1380. The husband must therefore be regarded as holding the legal estate for his own benefit and in trust for the security of the interests of his wife under the bond. The administrator by the recovery of seizin and possession stands in the place of the mortgagee, and holds the estate also in trust for the plaintiff, and the person to whom the administrator has conveyed,

and his grantees, having a knowledge of the trust, hold it in the same manner.

There is no evidence that the husband was in debt, or that he contemplated any fraud in relation to future creditors, when he conveyed his farm to Dominicus, and took from him the bond and mortgage. His death took place about seven years after the conveyance. His estate was represented insolvent and the avails of the land were needed for the payment of debts, but the debts must have been contracted long after the conveyance was made. They do not appear to have existed at that time. Such a conveyance cannot be impeached as fraudulent by subsequent creditors. *Usher* v. *Hazeltine,* 5 Greenl. 471; *Bennett* v. *Bedford Bank,* 11 Mass. 421; *Parker* v. *Nichols,* 7 Pick. 111; *Parkman* v. *Welch,* 19 Pick. 231. The husband, not being then in debt and not intending any fraud, had the right to make provision for his wife. Nor does the arrangement appear to be without any consideration on her part. She was entitled to dower in the premises conveyed, but relying upon the provision made for her, she has not enforced an assignment of it.

The bond to the husband and wife is mentioned in the condition of the mortgage, which was recorded March 8, 1847. And such registration operates as constructive notice upon all subsequent purchasers of any estate, legal or equitable, in the the same property, according to the American doctrine in cases in equity. Story's Eq. Jur. § 403. And the provision, made by our statute, c. 91, § 33, in relation to instruments in writing creating or declaring trusts, is, that such recording shall be equal to actual notice. The purchasers must be regarded then as having notice of the bond, and although the whole of it was not inserted in the condition of the mortgage, there was enough to give notice of its existence, and to put purchasers upon inquiry in relation to it. Thus notice of a lease will be notice of its contents. Story's Eq. Jur. § 400. It also appears by the proof, that John Merrill, James, Eunice B. and John Pike and Peletiah Moore had actual knowledge of the condition of the bond and mortgage, and that Moore acted as

the agent of Collins in procuring the purchase. Notice to the agent is constructive notice to the principal. It is not stated when the five acres were taken by the levy of Moore, but it was before the mortgage was recorded, and it does not appear, that he had any knowledge of its existence at that time. He will therefore hold the part levied upon unaffected by the mortgage. And the part taken by the levy of Johnson Warren is in the same condition.

It was the purpose of the husband, that the land should be holden for her support, not that she should have the land. If she should take the mortgage by survivorship, she would have the whole estate, which it does not appear to have been his intention, to give to her. Had the condition of the mortgage been to pay a sum of money, she would have been entitled to the money or the land after his decease. She has now a right to her support or to the land, and if she obtains the former it is all she was to have. The land might be worth much more than her support. The fact, that the mortgage was made to himself alone, indicates his purpose of retaining the legal estate under his own control, and in case of his death, that it should pass to his representatives, who might hold it by maintaining her. She comes into a court of equity and asks its aid, and it is not equitable, that she should have any more out of this estate of her husband than what he has bestowed upon her. His bounty was limited to her maintenance, and that she is entitled to receive out of the estate.

It is contended, that Smith, the administrator, Eunice, James, John and Dominicus Pike should be made parties to the bill. But neither of them have any interest in the premises, and cannot be affected by the decree. All the interest, which the three first named had in the premises has been conveyed to John Pike and Collins. It is alleged in the bill and admitted in the answers of Moore and Collins, that the estate has been foreclosed, and if so, neither Dominicus, the mortgager, nor William, his grantee, has any interest in it. Nor has John any interest in it. His interest has been conveyed to Royal B.

Hanson. The present holders of the estate have no community of interest with the past holders of it.

Hanson claims his title under John, who says in his deposition, that he purchased of James and Eunice by the request of his mother, and that he has paid her for that portion of the land purchased by him. If he has satisfied her for her interest in it, there could be no just reason why the land conveyed to him, and by him to Hanson should be subject to any claim on her part, and as Hanson would not be bound to contribute to her support, there is no necessity for making him a party to the bill.

The defendant Collins having a part of the estate, which is charged with the support of the plaintiff, is bound to furnish it according to the requirements of the bond. And his obligation to do so commences from the time when he took his title. She will be entitled to the damages in arrear from him in proportion to the value of his interest in the land held by him, and he will be liable in the same proportion for the future performance of the conditions of the bond. Whatever sums have been paid by him towards her maintenance will be deducted from the damages due to her, and he will be bound to pay interest on the balance.

The plaintiff claims to hold the defendant Moore as a party to the bill on the ground of fraud, and that he is the tenant to Collins. But as Collins had a right to purchase the estate, there could be no fraud in Moore in acting as his agent in making the purchase. And the claim for the maintenance of the plaintiff exists against the person holding the title, and not against a mere tenant or occupant under him. But as it might become necessary to deprive him of his term, to secure the support of the plaintiff, in case Collins should be unable to furnish his proportion, he was properly made a party to the bill, and as he had notice of the plaintiff's title, his interest under the lease must be subject to the rights of the plaintiff.

A master must be appointed to determine what proportion

of the support must be paid by Collins for the future, and also the amount of the past damages.