Hallock vs. Yankey and another.

BARDEEN, J., took no part.

HALLOCK, Appellant, vs. YANKEY and another, Respondents.

*January 12 — January 31, 1899.*

*Promissory notes: Suretyship: Release by extension: Estoppel: Release of co-surety.*

1. If a note is definitely extended in consideration of prepayment of interest by the principal maker, without the knowledge or consent of a surety, the latter is thereby released.
2. A surety on the note of a corporation who, in his capacity as an officer of the corporation, requested and procured an extension of the time for payment, is estopped to assert that he is discharged as surety because of his lack of consent as such to the extension.
3. Where one of two sureties on a note is released from liability, because the note has been extended without his consent, his co-surety is thereby, under sec. 4204, Stats. 1898, released from liability for one half the debt. The provisions of that section apply to joint sureties as well as to principal debtors, save in so far as they are limited by the proviso and by the terms of sec. 4205.

APPEAL from a judgment of the county court of Dodge county: M. S. GRISWOLD, Judge. *Affirmed as to one respondent; reversed as to the other.*

This was an action against the defendants to enforce their liability as guarantors of a promissory note. The defense was that the note had been extended by the holder thereof without the consent of the defendants, and consequently that they were released from liability. The evidence was meager, and showed that on the 23d of October, 1891, the Juneau Manufacturing Company, a corporation of Juneau, Wisconsin, borrowed $200 at the Citizens' Bank of Juneau, and executed a note for the same, payable ten days after date, with interest at eight per cent. per annum. The defendant *Yankey* was the treasurer and financial manager of the Juneau Manufacturing Company, and executed the note on behalf of the company. At the time the note was given, a written guaranty of payment was indorsed upon the back, signed by the defendants *Yankey* and *Hartzheim*, both of whom were stockholders in the corporation, and *Yankey* was, as before stated, the treasurer of the corporation. On the 3d of November, when the note fell due, it was not paid, but the interest was paid in advance for thirty days, and the bank indorsed an extension for thirty days on the back of the note, in consideration of the advance payment of interest. At the time of this extension, both *Mr. Yankey* and *Mr. Hartzheim* were present, and *Mr. Yankey*, acting for the corporation, paid the advance interest, in order to procure the extension; but it does not appear that *Mr. Hartzheim* actively participated either in the payment of the interest or in the request for the extension. The note was extended several times afterwards, and like agreements of extension indorsed upon the back, and the interest paid in advance each time by *Mr. Yankey*, as treasurer of the corporation; but the evidence does not show that *Mr. Hartzheim* had anything to do with the subsequent extensions, or even that he knew of them. The note was transferred to the plaintiff for value, before the commencement of this action. Upon this evidence the court directed a ver-

dict for the defendants, and from judgment upon such verdict the plaintiff appeals.

*George W. Sloan*, for the appellant, argued, among other things, that payment of interest on an *overdue* note, even for a definite period in advance, will not discharge the sureties. *Vilas v. Jones*, 10 Paige, 76; *Lowman v. Yates*, 37 N. Y. 601; *Gahm v. Niemcewicz's Ex'rs*, 11 Wend. 312; *Reynolds v. Ward*, 5 Wend. 501; *Hosea v. Rowley*, 57 Mo. 357; *Coster v. Mesner*, 58 Mo. 549; *Williams v. Smith*, 48 Me. 135; *Haydenville S. Bank v. Parsons*, 138 Mass. 53; *Oxford Bank v. Lewis*, 8 Pick. 458; *Blackstone Bank v. Hill*, 10 Pick. 129; *Central Bank v. Willard*, 17 Pick. 150; *Agricultural Bank v. Bishop*, 6 Gray, 317.

For the respondents there was a brief by *Malone & Bachhuber*, attorneys, and *Ryan & Merton*, of counsel, and oral argument by *J. E. Malone* and *E. Merton*.

WINSLOW, J. As to the defendant *Hartzheim* there can be no doubt that the verdict was rightly directed. His liability was that of a surety alone, and, upon very familiar principles of law, he was discharged if the time of payment of the note was definitely extended by a valid agreement without his consent. *Weed Sewing Machine Co. v. Oberreich*, 38 Wis. 325. Whatever may be the fact as to *Hartzheim's* presence at the time of the first extension of the note, it appears without dispute that the note was definitely extended in consideration of the prepayment of interest a number of times afterwards, without his presence or consent. The payment of interest in advance is a sufficient consideration for the agreement of extension of time. *Batavian Bank v. McDonald*, 77 Wis. 486.

As to *Yankey*, however, the question is different. The evidence seems to show satisfactorily that he was the acting officer of the corporation, not only in executing and delivering the note originally, but in paying the interest in advance

Hallock vs. Yankey and another.

at the time of each extension. There is certainly sufficient
evidence to justify a jury in finding that he, in legal effect,
requested each extension of time, and paid the advance in-
terest in order to secure such extension. It is true that he
made such requests and payments in his capacity as an of-
ficer of the corporation and on its behalf, and that nothing
was said as to his individual liability as guarantor; and the
question presented is whether, having requested and con-
sented to the extension on behalf of the corporation, he can
be heard to say that he did not thereby consent to the exten-
sion in his individual capacity as guarantor. Of course, the
obligations of a surety are *strictissimi juris*. He may stand
upon the letter of his contract. He may have knowledge
that an extension has been granted to his principal, and the
law does not impose on him the duty to speak. 2 Brandt,
Suretyship & G. § 345. But the surety is bound by the rules
of good faith and fair dealing, as well as other men. If he,
as agent for the principal debtor, requests and obtains an
extension of time, and pays the consideration for such exten-
sion, and nothing is said as to his liability as surety, it is
very obvious that the creditor would naturally and almost
inevitably conclude that he consents to the extension indi-
vidually, as well as in his capacity as agent. How many
bankers or business men would reason thus, "*Yankey* has
consented to the extension as treasurer of the corporation,
but has not consented in his individual capacity, and I must
now ask him if he consents as *Mr. Yankey*"? We think
very few would think of drawing such fine lines of distinc-
tion. After *Yankey* requested and procured the extension
on behalf of the corporation, and gave no notice to the
creditor that he did not consent to an extension in his char-
acter as surety, we think that well-known rules of estoppel
must be held to prevent him from asserting that he is dis-
charged as surety because of lack of consent. He has actively
induced a change of position on the part of his creditor, which

he will not be allowed to take advantage of, to his creditor's injury.

Another question here arises, namely, as to the effect of the discharge of *Hartzheim* upon the liability of *Yankey*. While his discharge is, in effect, a discharge by operation of law, still it resulted from the act of the creditor in extending the time of payment without the surety's consent; consequently, it must be given the same effect as a voluntary release. *Robertson v. Smith*, 18 Johns. 459. There is no doubt but that the provisions of sec. 4204, Stats. 1898, apply to joint sureties as well as to principal debtors, save in so far as they are limited by the proviso and by the terms of sec. 4205. Neither of these limitations includes the present case. Therefore the release of *Hartzheim* will operate to relieve his co-surety from liability for one half of the debt, that being the proportion which *Hartzheim* ought to have paid as between himself and *Yankey* had he not been released. There must be a new trial as to *Yankey*, but his liability in no event can exceed one half of the note and interest.

*By the Court.*— As to *Hartzheim* the judgment is affirmed, with costs, and as to *Yankey* it is reversed, with costs, and the action is remanded for a new trial.

