WILLIAM R. WHITEHEAD et al.

*v.*

AMERICAN LAMP AND BRASS COMPANY.

[Decided December 29th, 1905.]

1. Where a letter of guaranty was dated August 1st, 1903, and recited that the writer would guarantee the payment of "any future purchases during this year," the guaranty should be construed as limited to the remainder of the year 1903.

2. Where a private corporation enters into a contract in excess of its granted powers, but not expressly prohibited, and has received the benefits contracted for, it will be estopped to plead a want of power to make the agreement for the purpose of escaping performance on its part.

---

On appeal from receiver's order disallowing claim.

*Mr. Edwin C. Long,* for the appellant.

*Mr. Frank S. Katzenbach, Jr.,* for the receiver.

BERGEN, V. C.

The Clark Brothers Glass Manufacturing Company, a partnership, was engaged in the business of manufacturing glass and

assembling parts of lamps, with which they made the completed article. The lamps were made for the insolvent corporation, which had been organized under the laws of this state, and carried on its business in the city of Trenton.

The Fostoria Glass Company, prior to August 1st, 1903, had sold to the Clark Brothers Company a considerable quantity of goods, and applied to its debtor for a guarantee of the payment, not only of the amount due, but of all future purchases by the Clark Brothers Company. In reply to this application, which was referred to the defendant company, it wrote to the Fostoria company the following letter, signed by its proper officers:

"TRENTON, N. J., August 1st, 1903.

"*Fostoria Glass Company, Moundsville, West Va., W. A. V. Dalzell, President:*

"DEAR SIR—The Clark Bros. Glass Manufacturing Company of Elwood City have referred to us your letter of July 30th regarding your account against them, and as the goods which they buy of you are used in the manufacture of lamps for our account, we are willing to guarantee to you the ultimate payment of all purchases from you up to date, as well as any future purchases during this year, regardless of whether the account is an open one or has been closed by their note.

"As this letter is a standing guarantee covering all transactions, it will obviate the necessity of endorsing any note sent you from time to time so that settlement need not be referred to us for specific guarantee in each instance."

The appellant company shipped to the Clark Brothers Company goods as ordered by them until the month of February, 1904, when that partnership was declared insolvent and an assignee appointed for them in the State of Pennsylvania, and about the same time the defendant in this cause was declared to be an insolvent corporation, and Robert S. Woodruff was appointed its receiver by this court. At the time of the insolvency of the Clark Brothers Company it was indebted to the appellant in the sum of $5,229.52, and it is for this debt that the claim of the Fostoria Glass Company was presented to the receiver of the defendant company, payment being claimed from it based upon the guaranty alleged to be contained in the foregoing letter. This claim the receiver has rejected, and from such determination this appeal has been taken.

The Clark Brothers Company and the defendant company kept separate books of account, and at the time of the adjudication of insolvency of the Clark Brothers Company the defendant company was their creditor to an amount exceeding $27,000.

That the power to guarantee the payment of the past and accruing indebtedness of a third party is not within the chartered powers of the insolvent corporation is the ground upon which the receiver bases the disallowance of this claim. Whether an indemnity to one who is to furnish material to another for the purpose of being used in the manufacture of goods for the account of the guarantor is beyond the corporate powers of a manufacturing company organized under the laws of this state it is not necessary here to determine, because I am of the opinion that the corporation is estopped from setting up the plea of *ultra vires* to so much of this claim as accrued during the year 1903, after August 1st, the date of the guaranty. The written indemnity is limited to "any future purchases during *this* year," the proper interpretation of which is "during the year 1903." The guarantee of payment of past indebtedness was without any consideration to the guarantor, so far as this case shows, and such action was plainly beyond the purposes for which the corporation was organized, as it does not appear that it received any benefit or consideration. A different rule might be applied if it appeared that the future conduct of the business of the guarantor depended upon the furnishing of goods which could only be had from a vendor who refused to supply unless his accrued account was made secure by a guaranty, and that such continued supply was necessary to save the business of the guarantor from ruin, but such a condition is not shown to exist in this case, and no opinion is required or expressed on this point.

My conclusion is that so much of this claim as accrued before August 1st and after December 31st, 1903, is not provable against the insolvent estate and should be eliminated, and that the residue of the claim should be allowed.

The defendant company was engaged in a manufacturing business, to carry on which certain articles were being manufactured for its account by the Clark Brothers Glass Company,

to produce which the materials furnished by the claimant were essential. They could not be had from the claimant without the guarantee of the defendant company, which was given for the purpose of continuing its own business, and resulted in a direct benefit to it in the prosecution of the business it was chartered to carry on, and if the act of guaranty was beyond its expressed powers, it is not prohibited by the Corporation act of the state under which it was organized. Still, if the act was in excess of its authority, it having induced the claimant to part with its property relying upon the promised "ultimate payment," and being benefited by having the material manufactured for its account, it would be unconscionable to now permit it to interpose the plea it offers. The weight of modern judicial authority favors the rule that where a private corporation enters into a contract in excess of its granted powers, but not expressly prohibited, and has received the benefits contracted for, it will be estopped from pleading a want of power to make the agreement for the purpose of escaping performance on its part.

The strict rule applied to a *quasi* public corporation to prevent it from doing an act which may disqualify it from discharging its duties to the public is not enforced as to private corporations to such an extent as to permit them to do an injustice. *Bowman* v. *Foster & Logan Hardware Co., 94 Fed. Rep. 592.* In *Chicago, Rock Island and Pacific Railway Co.* v. *Union Pacific Railway Co., 47 Fed. Rep. 16,* Mr. Justice Brewer, referring to such a distinction, said: "But a milder rule applies when a corporation seeks to repudiate a contract into which it has formally entered. It is not seemly for a corporation, any more than for an individual, to make a contract and then break it; to abide by it so long as it is advantageous and repudiate it when it becomes onerous. The courts may well say to such corporation: 'As you have called it a contract, we will do the same. As you have enjoyed the benefits when it was beneficial, you must bear the burden when it becomes onerous.'"

The principal cases bearing upon the question of *ultra vires* are considered in *Camden and Atlantic Railroad Co.* v. *Mays Landing, &c., Railroad Co., 48 N. J. Law (19 Vr.) 530,* and its

application to *quasi* public and private corporations distinguished in an exhaustive opinion by Mr. Justice Van Syckel, who, speaking for the court of errors and appeals, said: "The true rule is that when the transaction is complete, and the party seeking relief has performed on his part, the plea of *ultra vires* by the corporation, which has acquiesced in it, is inadmissible in an action brought against it for not performing its side of the contract in all those instances where the party who has performed cannot, upon rescission, be restored to his former status."

The right of a manufacturing company to loan its credit for the express purpose of fostering its legitimate business is sustained, in *Holmes* v. *Willard, 125 N. Y. 75, 81,* by Judge Earl, as follows: "A corporation dealing in manufactured goods, and needing them for sale, may, as a proper incident to its business, extend financial aid to a manufacturer by advancing him money to enable him to furnish the goods. This aid may be extended by a loan of its own money, or it may take his notes, and by its credit raise money thereon and advance such money, looking for reimbursement out of goods to be manufactured and delivered to it."

The rule thus laid down is properly applicable to this case, for here the defendant loaned its credit to a manufacturer in order to enable it to procure goods to be manufactured for the defendant's account, and the loan of its credit can be as well justified as the loan of its money when used to advance its legitimate business.

It has not been shown that either the directors or stockholders of this corporation were ignorant of the fact of the guarantee upon which the claimant relied, and it is therefore "the just inference" that the directors and stockholders had so far acquiesced in the action of its officers as to bring the act of indemnity within the business of the corporation. *Holmes* v. *Willard, supra.*

The receiver will be advised to allow as a claim against this insolvent corporation so much of the indebtedness guaranteed as arose during the year 1903, after August 1st, and only so much of the interest items as relate to that part of the account

which falls within those dates. If the parties cannot agree as to the proper amount to which the claim should be reduced, a reference to a master may be taken. As the claimant has only succeeded in part, no costs will be allowed.