### IDA M. AMIDON v. TRAVERSE LAND COMPANY AND OTHERS.[1]

September 19, 1930.

No. 28,009.

[1]Reported in 232 N. W. 33.

*Houston & Huber,* for appellant.
*Murphy, Johanson & Nelson,* for respondent.

HOLT, J.

Action to foreclose a real estate mortgage wherein the mortgagor, defendant Traverse Land Company, appeals from the decree adjudging plaintiff entitled to a personal judgment against it for any deficiency that may exist after the sale of the land.

The facts not in dispute are these: Appellant, a corporation, owned 80 acres of land in Traverse county, this state, which it mortgaged to plaintiff and her mother, to whose interest plaintiff has succeeded, to secure its promissory note for $2,500, due December 1, 1924, with interest at six per cent according to coupon notes attached. In 1921 appellant conveyed the land to defendant D. R. Elkin, subject to the mortgage, which he assumed and agreed to pay. When the due date arrived Elkin could not pay, and he and his wife entered into a written agreement with plaintiff extending the time of payment to December 1, 1929; and as part of the same transaction Elkin and wife executed and delivered to plaintiff five interest coupon notes each for $150, one falling due each year during the extension period.

Appellant's main defense is that the extension was without its knowledge and consent. It was the maker of the note and mortgage; but, when it conveyed the land to Elkin subject to the mortgage debt assumed by the latter, the mortgagees, with knowledge of that fact, must thenceforth treat and consider Elkin as the principal debtor and appellant as the surety. Hence an extension granted Elkin without the knowledge and consent of appellant released it. Travers v. Dorr, 60 Minn. 173, 62 N. W. 269. However, upon appellant was the burden of proving that a valid extension was made without its knowledge and consent. Washington Slate

Co. v. Burdick, 60 Minn. 270, 62 N. W. 285; Goodhue County Nat. Bank v. Fleming, 168 Minn. 50, 209 N. W. 533.

There can be no question as to the validity of the extension agreement. The execution of the interest coupon notes was a good consideration for the extension. Appellant undertook to prove that it had not consented by testimony that its minutes and records contained no resolution or motion indicating assent to the extension, that it had not been passed on by its board of directors, and that its president did not know of the agreement until months after it had been recorded. The court however found that the extension was granted at the request of appellant, and

"the defendant Traverse Land Company, by and through its secretary and treasurer, took active part in securing and arranging for said extension, and that the extension agreement * * * and all its provisions and conditions were dictated by said secretary and treasurer representing the said defendant Traverse Land Company, and was actually drafted, prepared and executed under his direction and thereafter by the said land company through its officers and agents recorded in the office of the register of deeds of Traverse county, Minnesota; that said extension was brought about with the knowledge, consent, assistance, and co-operation of said defendant Traverse Land Company, and in its behalf and interest."

This finding and others of like import are challenged as unsupported. The record gives the impression that appellant is owned and controlled by two men, Neuman, the president, and Huntzicker, the treasurer and secretary, and of these the latter was most generally to be found in appellant's place of business in charge thereof. Only one employe is mentioned. The president solicited the loan; but that aside, all the dealings of plaintiff in regard thereto were with Huntzicker. He paid the interest coupons both before and after the extension agreement. He was the one that suggested the extension when plaintiff wanted her money at its due date in December, 1924. He knew that Elkin could not pay. He brought Elkin to plaintiff and introduced him, and she claims that all the negotiations in respect to the extension were carried on by Hunt-

zicker, Elkin saying nothing. The trial court could accept as true plaintiff's version of what was said and done when he brought Elkin to her and asked, "How about having this mortgage extended?" She then inquired: "Will this release you people, Traverse Land Company, from this mortgage?" Huntzicker answered: "No, it wouldn't. * * * You have our same note and mortgage, * * * and the only difference will be the extension of the time from December 1, 1924, to December 1, 1929. * * * You come to our office for interest the same as you have done in the past. * * * You have our same mortgage, our same note, and we are back of it the same as we have been." When on this assurance she consented and Huntzicker offered to prepare and did prepare the extension agreement, could she draw any other conclusion than the one the court found, namely, that the extension was at the request of appellant and with its knowledge and consent? The only legal question could be whether the words and acts of Huntzicker could be imputed to appellant.

The law does not require consent to be in writing, nor does it call for action by a board of directors when a corporation is the actor.

"Whether the surety in any given case did or did not consent to such an extension is a question of fact, which may be proved in the same manner as any other fact, the evidence of which need not be in writing, by direct or circumstantial evidence." Bandler v. Bradley, 110 Minn. 66, 70, 124 N. W. 644.

Since it need not be in writing, an officer in active charge of the business of a corporation ought not to be required to have written authorization to consent to an extension. By consenting to the extension the corporation entered into no new obligation. As already stated, the burden was on appellant to show that it did not consent. The record is clear that its managing officer did consent, and there is no proof that he had not the authority to do so. The inference from the fact that Huntzicker was instrumental in procuring the extension agreement is that appellant consented thereto. State Bank v. Mutual Tel. Co. 123 Minn. 314, 143 N. W. 912, Ann. Cas. 1915A, 1082; A. B. Klise Lbr. Co. v. Enkema, 148 Minn. 5, 181

N. W. 201. From her past dealings with appellant, it ought in fairness to be estopped from disputing Huntzicker's authority to give its assent or consent to the extension. Hallock v. Yankey, 102 Wis. 41, 78 N. W. 156, 72 A. S. R. 861. Appellant had an interest in securing an extension in the situation it and Elkin were when the debt fell due. No doubt both hoped that if such were granted, the expected rise in values would help to realize the debt from the land mortgaged without resorting to the maker of the note for payment. It appears to us that the quoted part of the findings are well sustained and justify a deficiency judgment against appellant.

The second defense was first suggested at the trial when plaintiff rested, and is that a decree for a deficiency was improper because the extension had not expired at the time the action was brought. The note contained an acceleration clause under which plaintiff could declare the whole debt due upon default in the payment of taxes or interest. Such default existed when the suit was instituted. The extension agreement expressly continued in force the terms and conditions of the note and mortgage, and in effect merely substituted the due date of December 1, 1929, in place of that of December 1, 1924. The acceleration clause of the note applied to the interest and taxes falling due subsequent to the last named date with the same effect as it did to the interest and taxes falling due previous thereto.

We consider the judgment right, and it is affirmed.