In the Matter of MILL CITY PLASTICS, Inc., and Mill City Plastics Industries, Inc., its Successor, Bankrupt.

No. 19706.

United States District Court, D. Minnesota, Fourth Division.

Feb. 28, 1955.

Samuel P. Halpern and Louis B. Schwartz, Minneapolis, Minn., for petitioner.

Charles H. Halpern, Minneapolis, Minn., for trustee.

88

NORDBYE, Chief Judge.

This proceeding came before the Court on a petition for review of the order of the Referee in Bankruptcy disallowing the claim of petitioner, Northtown Theatre Corporation, for interest and attorney's fees allegedly owed by the bankrupt under the provisions of a refinancing agreement secured by certain chattel mortgages.

The refinancing agreement entered into between the petitioner and the bankrupt stated that the petitioner had purchased from the Industrial Credit Plan, Inc., the notes of the bankrupt which had been held by Industrial Credit. The amount paid by petitioner for these notes was $8,658.62. The refinancing agreement with the bankrupt provided that the petitioner would hold these notes for eighteen months at eight per cent simple interest. The interest for eighteen months was computed in advance and a monthly repayment schedule was agreed upon.

The original agreement with the Industrial Credit Plan, Inc., had also been based upon a stipulated repayment schedule, the face amount of the notes representing the aggregate of principal and interest expected to accrue before the loan was repaid. These notes each contained a provision that in case of default in any installment of principal or interest, "the principal sum above mentioned, or any balance that may appear to be unpaid thereon shall, at the option of the legal holder hereof thereupon become immediately due and payable without notice." The notes and the mortgages given to secure them contain provisions for payment by the debtor of just and reasonable expenses, including an attorney's fee, if they were placed in the hands of an attorney for collection "in any manner". There is no provision in the notes, mortgages, or in the refinancing agreement permitting the bankrupt to pay off its indebtedness in advance of the dates agreed upon.

Two installments had been met by the debtor when it filed an original petition under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., for an arrangement with its unsecured creditors. At that time, the November installment had become due but was unpaid. The arrangement proceeding failed of its purpose and the debtor was adjudged a bankrupt. At the time of such adjudication, the December installment of principal and interest had become due but was also unpaid. With the consent of the petitioner, the Trustee in Bankruptcy sold the property described as security in the chattel mortgages held by petitioner. On February 15, 1954, the proceeds of the sale, which were greatly in excess of the amount due petitioner on its secured claim, came into the hands of the Trustee, and on February 17, 1954, the Trustee paid petitioner $7,763.18 as a purported satisfaction of its secured claim. This amount was arrived at by deducting $1,158, the amount of the two installments already paid, from $8,658.62, the amount that the petitioner actually paid Industrial Credit for the bankrupt's notes and mortgages, and then adding eight per cent interest on the difference from October 20, 1953, the date when the last installment had been paid, to February 17, 1954. The petitioner claimed before the Referee that, because of the operation of the acceleration clauses in the notes, it was entitled to the sixteen unpaid monthly installments of $540 each, totaling $8,640, rather than the $7,763.18 the Trustee had already paid it, and therefore sought an additional payment from the Trustee of $876.82. In addition, at the hearing held on its petition, it asked for an allowance for reasonable attorney's fees in accordance with the provisions in the notes and mortgage. Both these requests were denied.

The Referee was correct in disallowing petitioner's claim for $876.82. While the petitioner would have been entitled to this sum, in addition to $7,763.13, had the notes been repaid in accordance with the schedule set out therein, it represented, at the time when the Trustee actually attempted to discharge the debt, interest which had not yet been

earned. It is true that the bankrupt had no right under the agreement to pay off its indebtedness in advance. And it is certainly undebatable that the Trustee can acquire no rights under the agreement greater than the bankrupt itself had. However, the bankrupt was in default under the contract before its petition under Chapter XI. And the present petitioner has, by seeking to recover presently the whole indebtedness under the agreement, quite clearly elected to exercise its option to declare the debt immediately due and payable. The simple question presented, therefore, is whether it has a right to interest which, though computed in advance, has not yet been earned.

The Court does not believe that any rule peculiar to the law of bankruptcy prevents allowance of the full amount of interest claimed. Section 63, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 103, sub. a, includes as a debt provable in bankruptcy one founded upon a fixed liability, evidenced by an instrument in writing, absolutely owing at the time of filing of the bankruptcy petition, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest not then payable. It is clear that a claim arising out of a contract is provable even as to installments which, except for the bankruptcy, would not have become due until future dates, Central Trust Co. of Illinois v. Chicago Auditorium Ass'n, 1916, 240 U.S. 581, 36 S.Ct. 412, 60 L.Ed. 811, and this is true even where the contract provides that the damages arising therefrom are to be recoverable only in installments. In re Twentieth Century Millinery Exchange, Inc., D.C.S.D.N.Y., 1930, 41 F.2d 237. The provision in section 63, sub. a, with regard to interest might seem to preclude the present petitioner from recovering that amount of the mortgage debt which represents interest accruing after the filing of the original petition under Chapter XI. See 11 U.S.C.A. § 702. However, petitioner's claim for $876.82 is not in the nature of a claim for interest on a provable debt. Although a proof of claim was filed, petitioner claims as a secured creditor who asserts that his lien applies to the entire mortgage indebtedness, including that portion of the indebtedness which represents interest on the principal debt. Such a secured claim is usually unaffected by bankruptcy. Cf. Security Mortgage Co. v. Powers, 1928, 278 U.S. 149, 156, 49 S.Ct. 84, 73 L.Ed. 236. Thus it is commonly held that, although it might seem that the effect of section 63, sub. a, would be to stop interest at the filing of the bankruptcy petition, a secured creditor is entitled to continued interest in accordance with the terms of his mortgage, even though it accrues after the filing of the petition, upon the theory that the property may be mortgaged validly for the payment of interest as much as for the payment of principal, and that if it is so mortgaged, it comes into the hands of the Trustee subject to such a charge. E. g., Wilson v. Dewey, 8 Cir., 1943, 133 F.2d 962; Coder v. Arts, 8 Cir., 1907, 152 F. 943, affirmed 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772 [1]; see 3 Collier, Bankruptcy 1840 (14th ed. 1941). Therefore, if the acceleration clauses in the notes create a valid lien under state law for the full amount of petitioner's claim, the lien is enforcible in this Court.

The substance of petitioner's argument is that, had it foreclosed its mortgage, the debtor could not have claimed that petitioner was entitled only to the unpaid principal plus interest to the date of sale, and that the Trustee is

---

[1]. In the two cases cited, the mortgagee sought interest only up to the date when the mortgaged property was sold by the Trustee free of encumbrances and when its claim was paid from the proceeds. In those cases, there was no claim for interest not already accrued. However, the cases seem to be authority for the proposition that if a promise to pay interest is validly secured, then nothing in the Bankruptcy Act prevents the creditor from enforcing the lien in accordance with its terms.

in no better position than the bankrupt would have been in. This argument, however, misses the point of the Referee's findings. The Referee found that the provision under which petitioner sought to recover for unearned interest was a penalty provision and invalid. If the Referee was sound in that respect, the provision involved would be unenforcible in a foreclosure proceeding as well as in the bankruptcy court.[2]

 Acceleration clauses which serve to hasten the maturity of a debt in the event of a default in some condition of the contract are, of course, quite common. And it has long been settled that where such a clause provides that the principal debt and accrued interest shall become due and payable on default, it is, in its normal operation, fair to both lender and borrower, is not a penalty, and is valid and enforcible. E. g., Olcott v. Bynum, 1872, 17 Wall. 44, 84 U.S. 44, 21 L.Ed. 570; Federal Land Bank of Omaha v. Wilmarth, 1934, 218 Iowa 339, 252 N.W. 507, 94 A.L.R. 1338; Bedford v. Tetzlaff, 1953, 338 Mich. 102, 61 N.W.2d 60; Rathje v. Siegel, 1928, 243 Mich. 376, 220 N.W. 658; Matthews v. Guenther, 1931, 120 Neb. 742, 235 N.W. 98; Graf v. Hope Building Corp., 1930, 254 N.Y. 1, 171 N.E. 884, 70 A.L.R. 984; see Brewer v. Penn. Mut. Life Ins. Co., 8 Cir., 1899, 94 F. 347; Amidon v. Traverse Land Co., 1930, 181 Minn. 249, 232 N.W. 33. The reasoning behind most of these cases is that they involve no forfeiture of anything but a right of credit created by the contract and terminable according to its terms. See 3 Williston, Contracts, 2218–2219 (rev. ed. 1937). However, in cases like the present, where the mortgage is given to secure a fixed sum representing the aggregate of principal and the interest thereon for a period of the mortgage, the rule is that a clause accelerating the maturity of the debt will not be enforced except upon cancellation of the unearned interest, for to do so would be unconscionable. Holman v. Hollis, 1927, 94 Fla. 614, 114 So. 254; Williams Heirs v. Douglass, 1895, 47 La. Ann. 1277, 17 So. 805; Dugan v. Lewis, 1891, 79 Tex. 246, 14 S.W. 1024, 12 L.R. A. 93; Cissna Loan Co. v. Gawley, 1915, 87 Wash. 438, 151 P. 792, L.R.A.1916B, 807; 19 Ruling Case Law 496; cf. Lowenstein v. Phelen, 1885, 17 Neb. 429, 22 N.W. 561.

The Supreme Court of Minnesota has not ruled upon this precise point. However, there is no reason to believe that it would depart from the general rule. That court has made it clear that the rule forbidding the enforcement of penalties is especially applicable to contracts between the necessitous borrower and the money lender. See Palmer v. Mutual Life Ins. Co., 1911, 114 Minn. 1, 130 N.W. 250. And it has held, in Goodell v. Accumulative Income Corp., 1932, 185 Minn. 213, 240 N.W. 534, that a provision in an investment contract which provided that if the holder of the contract defaulted in any monthly payment before the end of a three-year period, all payment already made would be forfeited, was a penalty and void because there was no rational connection between the amount to be forfeited and the actual damages likely because of default. Other courts applying this principle have refused to enforce forfeiture provisions in circumstances similar to those in the case at bar. Thus a provision in a lease declaring that in the event of a breach by

---

2. The Referee's decision that because this provision amounted to a penalty, it was unenforcible, was based upon the theory that the bankruptcy court is a court of equity, and not upon any specific provision of the Bankruptcy Act. The question whether a provision in a contract amounts to a penalty is one of state law and policy. In re Tastyeast, Inc., 3 Cir., 1942, 126 F.2d 879, and the rules governing the distinction between contractual penalties and valid liquidated damages provisions are substantially the same in bankruptcy as in any other equity proceeding. 3 Collier, Bankruptcy 1799 (14th ed. 1941). Section 57, sub. j of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. j, regarding penalties and forfeitures, applies, of course, only to penalties owing to the United States or to a State, and not to those owing to a private person. Id. at page 297.

the lessee, future installments of rent will become immediately due, is a penalty and will not be enforced. Kothe v. R. C. Taylor Trust, 1929, 280 U.S. 224, 50 S.Ct. 142, 74 L.Ed. 382; In re Scholz-Mutual Drug Co., D.C., 1924, 298 F. 539. In the case at bar it is apparent that if petitioner were allowed the full amount of its claim it could reinvest and be substantially better off than if the bankrupt had fulfilled its contract according to its terms. Granted that it might not be able to reinvest at such favorable terms, still its damages because of the breach could be no more than the difference between the eight per cent due it under the contract and the currently prevailing rate. This acceleration clause makes no attempt to set damages according to such a measure and is therefore unenforcible.

■ The Referee erred, however, in refusing to allow a reasonable sum as attorney's fees incurred in petitioner's attempt to collect on the notes. The notes themselves provided that if they were placed in the hands of an attorney for collection "in any manner", the debtor would pay an attorney's fee to be an amount equaling fifteen per cent of the balance due, which fee should not be less than thirty dollars. It would seem that the legal services performed by counsel for petitioner in drawing its proof of claim, in drawing the petition submitted to the Referee, in appearing at the hearing held by the Referee, and in presenting this petition for review were rendered in a good-faith attempt to recover what it believed was due it under the provisions of the notes and mortgages. It is true that most of these services were rendered subsequent to the date when the Trustee tendered $7,763.18 in attempted satisfaction of petitioner's secured claim. However, proceedings had, at that date, already been commenced for the purpose of recovering whatever was legally owed under the notes and mortgages. Early in January counsel for petitioner had filed a proof of claim with the bankruptcy court. And just two days after the Trustee had mailed the $7,763.-18 check, counsel for petitioner obtained an order to show cause before the Referee why its claim should not be allowed in full. By the terms of the notes, the debtor's liability for attorney's fees was to accrue when they were incurred. Thus, at the time of the tender a liability for some services had accrued. Under the decisions of the Supreme Court of Minnesota, a tender will not discharge a mortgage lien unless the tender is of the exact amount due. E. g., Kingsley v. Anderson, 1908, 103 Minn. 510, 115 N.W. 642, 116 N.W. 112. Thus, where an attorney employed to foreclose a mortgage had drawn the notice of sale and had it set in type by the printer, it was held that the claim for fees had accrued so that a tender not including them was ineffectual. Mjones v. Yellow Medicine County Bank, 1891, 45 Minn. 335, 47 N. W. 1072. It seems, therefore, that the Trustee's tender was insufficient to satisfy petitioner's rightful claim. Since further legal proceedings have become necessary to recover the debt in full, the reasonable value of such services would seem to be encompassed by the provisions of the notes, even though petitioner has also sought in such proceedings to recover sums to which it was not legally entitled under the mortgage, namely the $876.82 representing unearned interest.

■ It is established that the value of attorney's services rendered in an attempt to collect upon a mortgage indebtedness are allowable out of the proceeds of mortgaged property sold free of liens by the bankruptcy court, if the mortgage provides for the payment of such fees, even though the services were rendered after the bankruptcy adjudication. The Supreme Court has held that the value of such services are allowable, not as a provable claim, but as part of the principal debt which is also secured by a lien upon the property sold—and when by the rendition of services the liability for their reasonable value becomes absolute, the lien becomes enforcible even though this occurs after the adjudication. Security Mortgage Co. v. Powers, 1928, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236. In the case just cited, the attorney's services

had been rendered prior to the sale of the property by the Trustee. However, in the case at bar, the sale of the property merely transferred petitioner's lien from the mortgaged property to the proceeds of the sale. And since the Trustee's tender was insufficient to discharge that lien, it would seem that the lien would apply to services rendered subsequent to the sale as well, as long as they are covered by the covenant contained in the notes and mortgages.

At the hearing before the Referee, petitioner's counsel stated that he would not insist upon a fee equal to fifteen per cent of the balance due on the debt, but would leave the amount of the fee to the Referee to determine. The Referee held that counsel thereby waived the fifteen per cent stipulation in the notes and since he introduced no proof as to the value of his services, no attorney's fee would be allowed. It seems to the Court that counsel's willingness to accept less than fifteen per cent was nothing more than a recognition that he was not entitled to such a sum unless services were actually rendered the reasonable value of which equalled such sum. For it has long been settled, both in this Circuit, see First Sav. Bank & Trust Co. of Albuquerque v. Stuppi, 8 Cir., 1924, 2 F.2d 822, and in the State of Minnesota, that a stipulation like the present just sets a maximum figure and that attorney's fees are allowable only to the extent of the reasonable value of the services actually performed. Campbell v. Worman, 1894, 58 Minn. 561, 60 N.W. 668; Johnston Harvester Co. v. Clark, 1883, 30 Minn. 308, 15 N.W. 252; see Morse v. Home Savings & Loan Ass'n, 1895, 60 Minn. 316, 318, 62 N.W. 112, 113.

Further, it seems to this Court well established that where a party seeks to recover fees for services rendered by his attorney in the presence of the court, no testimony need be offered as to their reasonable value, since the court itself is competent to pass upon the question of the reasonable value of such services. First Sav. Bank & Trust Co. of Albu-

querque v. Stuppi, supra; Vanderburgh v. Vanderburgh, 1922, 152 Minn. 189, 188 N.W. 276; State ex rel. Hoefs v. District Court, 1911, 113 Minn. 304, 129 N.W. 583; Kingsley v. Anderson, 1908, 103 Minn. 510, 115 N.W. 642, 116 N.W. 112. The cases cited by the Referee, Mechanics'-American Nat'l Bank v. Coleman, 8 Cir., 1913, 204 F. 24, and Johnston Harvester Co. v. Clark, 1883, 30 Minn. 308, 15 N.W. 252, if contrary to this principle, would seem to be overruled by the cases cited above. However, it seems that both those decisions did not involve the precise issue presented here, but established only the proposition previously discussed, that attorney's fees will not be allowed unless it is shown that services actually were rendered and not in excess of the actual value of such services.

It follows from the foregoing that the Referee's order is affirmed in disallowing petitioner's claim for $876.82. As to the question of attorney's fees to be allowed petitioner, the order of the Referee is reversed, and this matter is referred to the Referee with direction to proceed therein consistent with the views herein expressed. It is so ordered.

An exception is reserved.